**Timothy McCULLOCH, individually and on behalf of all others similarly situated, Plaintiff,**

**Rosie Bolton, Brenda Watts Brown, et al., Plaintiffs–Appellants,**

**v.**

**PNC BANK INC., a foreign corporation, BAC Inc., a Florida corporation, et al., Defendants–Appellees.**

**No. 02–10058**
**Non–Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

July 17, 2002.

Charles D. Franken, Fort Lauderdale, FL, for Plaintiffs–Appellants.

Don A. Lynn, Shutts & Bowen, LLP, Elliot H. Scherker, Ronald M. Rosengarten, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Rudolph F. Aragon, Paul J. Schwiep, Aragon, Burlington, Weil & Crockett, P.A., Miami, FL, David A. Beke, John J. Witmeyer, III, Ford, Marrin, Esposito, Witmeyer & Gleser, New York City, Mark D. Brookstein, Alan N. Salpeter, Michael B. Goldberg, Mayer, Brown, Rowe & Maw, Chicago, IL, Darryl J. May, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for Defendants–Appellees.

Before ANDERSON, CARNES and HULL, Circuit Judges.

PER CURIAM:

We affirm the district court's dismissal of plaintiff's complaint for the reasons set out in the district court's opinion dated

October 19, 2001, which is attached as an Appendix.

AFFIRMED.[1]

### APPENDIX

United States District Court Southern District of Florida Miami Division

Case No. 01–2608–CIV–GRANAN

Decided Oct. 19, 2001.

Timothy A. McCulloch, et al., Plaintiffs,

vs.

Educational Finance Group, Inc., et al., Defendant.

### ORDER

THIS CAUSE came before the Court upon the Motions to Dismiss of Defendants Academic Management Services Corporation (f/k/a Educational Finance Group, Inc.) ("U*MS") (D.E.23), and Marcus A. Katz (D.E.29).[1]

THE COURT has considered the motions, the pertinent portions of the record, and is otherwise fully advised in the premises. Defendants argue that dismissal of the Class Action Complaint ("Complaint") is required pursuant to Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Complaint must be dismissed.

### I. BACKGROUND

This case involves the Federal Family Education Loan Program established by the Higher Education Act of 1965, as amended, 20 U.S.C. § 1071 *et seq.* ("HEA"). Defendants are lenders and marketers of student loans, including low-interest federal Parental Loans for Undergraduate Students ("Plus Loans").[2] Plus Loans enable parents with good credit histories to borrow at a rate that is lower than otherwise available to pay the education expenses of each child who is a dependent undergraduate student. See 20 U.S.C. § 1078–2.

Plaintiffs are a putative class of parents of college-bound high school students contacted by Defendants and turned down for Plus Loans on the ground of uncreditworthiness. Plaintiffs allege that after they were informed by Defendants that they did not qualify for a Plus Loan or could not obtain a guarantor to co-sign the Plus Loan, Defendants failed to inform them that their children (and not Plaintiffs) may qualify for federal Additional Unsubsidized Stafford Loans ("Stafford Loans") of up to $4,000 per year. See 20 U.S.C. § 1078–8.

Plaintiffs allege that the failure to disclose information about the potential availability of Stafford Loans after Plaintiffs were turned down for Plus Loans violates the HEA, 20 U.S.C. § 1078–8. Plaintiffs, however, concede that the HEA does not confer an express private right of action, and specifically request that this Court imply a private right of action under the HEA. Complaint, at ¶ 60–61.[3]

---

1. Appellant's other arguments on appeal are rejected without need for discussion. Appellee's request for oral argument is denied.

1. The remaining defendants, SAC Inc. ("SAC") and PNC BANK. N.A. ("PNC") have joined in Defendant JAMS's motion to dismiss.

2. Defendants AMS, SAC, and PNC are participating lenders in the federal guaranteed student loan program. Defendant Marcus A. Katz created the marketing scripts used by the lenders to solicit and offer Plus Loans.

3. In their prayer for relief, Plaintiffs seek a judgment "that the United States Congress expressly re-examine the HEA to provide for a private right of action as a condition to permit Defendants to continue to offer and solicit and enter into loans under the HEA." Complaint, at p. 41, ¶ g.

Beyond requesting that this Court imply a private claim for relief under the HEA, Plaintiffs appear to request that this Court imply and read into the HEA the very disclosure requirements upon which their HEA claim is predicated.[4] Specifically, Plaintiffs appear to acknowledge that the duty to provide financial aid information rests with educational institutions. *See* Complaint, ¶ 17, 21(i), 21(q); 34 C.F.R. §§ 682.201, 668.41(d), 668.42. However, Plaintiffs suggest that this Court should impose those disclosure requirements on Defendants, on the theory that because Defendants contacted Plaintiffs well before Plaintiffs' children were accepted to college and thus before they had access to college financial aid offices, Defendants somehow usurped the financial aid offices' role and "undertook to control the flow of information to Plaintiffs concerning student financial aid." Plaintiff's Memorandum, at p. 2 (D.E.41).[5]

Plaintiffs also allege that Defendants' failure to provide alternative financial aid information about Stafford Loans constitutes mail and wire fraud, and thus violates the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"). In addition, Plaintiffs assert that the failure to provide information about Stafford Loans constitutes common-law negligence, breach of fiduciary duty, and/or negligent misrepresentation.

4. As discussed more fully herein, Plaintiffs do not allege or identify any provision in the HEA or its implementing regulations specifically requiring *lenders or marketers to provide* alternative financial aid information after determining that an applicant does not qualify for a Plus Loan.

5. Curiously, Plaintiffs make no factual allegations concerning exactly how *Defendants* managed to "control the flow of information" such that financial aid information was not

As a result of the alleged scheme, Plaintiffs claim injury in that their children (and not Plaintiffs) were deprived of up to $16,000 in Stafford Loans. Further, Plaintiffs claim that as a result of Defendants' failure to disclose the potential availability of Stafford Loans, their children (and again, not Plaintiffs) were unable to attend the colleges or universities of their choice.

## II. STANDARD OF REVIEW

For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all well-pleaded facts alleged by the plaintiff are accepted as true. See *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). It is well-settled that a "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## III. DISCUSSION

### A. *The HEA Claim.*

Defendants move to dismiss Count I, which purports to assert a cause of action pursuant to Section 428(H) of the HEA, 20 U.S.C. § 1078–8, which authorizes federally insured Unsubsidized Stafford loans for borrowers who meet certain eligibility requirements. Plaintiffs contend that Defendants violated 20 U.S.C. § 1078–8 by failing to disclose information about Stafford Loans after Plaintiffs were turned down for Plus Loans.[6]

available to Plaintiffs (or their children) from a multitude of other sources, such as high school guidance counselors, the Department of Education, local banks, the Internet, or college financial aid offices (for those Plaintiffs whose children applied and were accepted to college, even though their parents did not qualify for Plus loans).

6. 20 U.S.C. § 1078–8, however, does not impose any disclosure requirements on lenders or marketers of student loans.

Plaintiffs concede that the HEA does not expressly confer a private right of action, as the HEA only provides for a suit brought by or against the Secretary of Education. 20 U.S.C. § 1082(a)(2). Indeed, the HEA provides an enforcement scheme which gives the Secretary of Education wide-ranging regulatory authority to enforce the provisions of the HEA. *See* 20 U.S.C. §§ 1070(b), 1071, 1082, 1094; 34 C.F.R. §§ 5668.84–.98.

Although the Eleventh Circuit has not addressed whether a private right of action exists under the HEA, it is important to note at the outset that nearly every court to consider the issue in the last twenty-five years has determined that there is no express or implied private right of action to enforce any of the HEA's provisions. *See, e.g., Labickas v. Arkansas State University,* 78 F.3d 333, 334 (8th Cir.1996); *Parks School of Business v. Symington,* 51 F.3d 1480, 1485 (9th Cir. 1995); *L'ggrke v. Benkula,* 966 F.2d 1346, 1348 (10th Cir.1992); *Bartels v. Alabama Commercial College,* 918 F.Supp. 1565, 1573 (S.D.Ga.1995); *New York Institute of Dietetics, Inc. v. Great Lakes Higher Education Corp.,* [No. 94–CIV—4858, 1995 WL 562189 (S.D.N.Y. Sept.21, 1995)], *Moy v. Adelphi Institute, Inc.,* 866 F.Supp. 696, 705 (E.D.N.Y.1994); *Jackson v. Culinary School of Washington,* 788 F.Supp. 1233, 1256–60 (D.D.C.1992), *remanded on other grounds,* 27 F.3d 573 (D.C.Cir.1994), *vacated on other grounds,* 515 U.S. 1139, 115 S.Ct. 2573, 132 L.Ed.2d 824 (1995); *Keams v. Tempe Technical Institute, Inc.,* 807 F.Supp. 569, 570 (D.Ariz.1992),*reversed on other grounds,* 39 F.3d 222 (9th Cir.1994); *Hudson v. Academy of Court Reporting,* 746 F.Supp. 718, 721 (S.D.Ohio 1990); *St. Mary of the Plains College v. Higher Education Loan Program of Kansas, Inc.,* 724 F.Supp. 803, 806–07 (D.Kan.1989); *Graham v. Security Savings and Loan,* 125 F.R.D. 687, 693 (N.D.Md.1989); *aff'd sub nom Veal v. First American Savings Bank,* 914 F.2d 909 (7th Cir.1990). Although these decisions provide persuasive precedent for declining to imply a private right of action, the Court will nevertheless conduct its own analysis to determine whether Congress intended to provide Plaintiffs with a private remedy for violations of the HEA.

B. *The Cort v. Ash Test and Whether An Implied Private Right of Action Exists Under the HEA.*

As mentioned above, Plaintiffs concede that the HEA does not provide an express private right of action. As such, the burden rests with Plaintiffs to establish that an implied private right of action exists. *See, e.g., Bartels,* 918 F.Supp. at 1573.

In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court articulated a four-part test for determining whether to imply a private cause of action in a statute not expressly providing for one. *See id.,* 422 U.S. at 78, 95 S.Ct. 2080. The four factors relevant to determining congressional intent to create a private remedy are:

(1) whether plaintiffs constitute "one of the class for whose especial benefit the statute was enacted;"

(2) whether there is "any indication of legislative intent, explicit or implicit, either to create a remedy or to deny one;"

(3) whether inferring a private right of action would be "consistent with the underlying purposes of the legislative scheme;" and

(4) whether the cause of action "is traditionally relegated to state law ... so that it would be inappropriate to infer a

cause of action based solely on federal law."

*Id.*

The Supreme Court has subsequently explained that the critical focus of the inquiry is the second *Cort* factor, and whether Congress intended to create a private right of action. Four years after *Cort v. Ash*, the Supreme Court cautioned the judiciary to exercise restraint in implying a private right of action, and required that affirmative evidence of congressional intent to create a private remedy must exist. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 578, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).[7]

Plaintiffs argue that application of the *Cort* test to the facts of this case reveals that Congress intended to provide Plaintiffs with a private remedy under the HEA. The Court disagrees.

### 1. The HEA Was Not Enacted to Benefit Parents.

Plaintiffs concentrate their argument on pointing to legislative history revealing that Congress enacted the HEA to benefit students. Clearly, Congress intended for the HEA to benefit students. *See* 20 U.S.C. § 1071(a)(1)(B) (Title IV of HEA enacted in part to "provide student loans to those who would not otherwise have access to funds"); *Parks*, 51 F.3d at 1484. *Jackson*, 788 F.Supp. at 1257 (citing H.R. 1086, 94th Cong., 2d Sess. 5 (1976)).

However, the inquiry does not end there, as Plaintiffs gloss over the fact that they are not students. Plaintiffs are the parents of college-bound high school students, and have failed to point to any provision in the statutory text or legislative history of the HEA indicating that Congress enacted the HEA to benefit the parents of college-bound students. Without more, the Court cannot find that Plaintiff-parents constitute "one of the class for whose especial benefit the [IIHEA] was enacted." *Cort*, 422 U.S. at 78, 95 S.Ct. 2080.

### 2. There is No Explicit or Implicit Indication of Legislative Intent to Create a Private Right of Action.

Moreover, even if Plaintiffs satisfied the first *Cort* factor, Plaintiffs fail to satisfy the second and most important of the *Cort* factors, as they have failed to provide any indication that Congress intended to allow students (or their parents) to sue under the HEA. As one court has noted, Congress' desire to enact the HEA to benefit students by making educational opportunities available to them is "not tantamount to an expression of legislative intent in favor of equipping students with a private right of action against ... participants in the [federal student loan] program." *Jackson*, 788 F.Supp. at 1257.[8]

### a. The Statutory Text and Structure of the HEA Does Not Indicate Congressional Intent to Create A Private Right of Action.

Where, as here, a statute provides administrative remedies, there is a presumption that Congress did not intend to create a private right of action, but rather provid-

---

7. *See also Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 94, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (noting that unless "congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.").

8. *See also Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (stating that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private right of action in favor of that person.").

ed precisely the remedies it considered appropriate. *See, e.g., Transamerica Mortgage Advisors v. Lewis,* 444 U.S. 11, 19–20, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) (explaining that when a statute expressly provides for a particular means of enforcement, courts should be cautious in reading additional enforcement mechanisms into the statute).

In enacting the HEA, Congress expressly provided a detailed regulatory scheme which confers on the Secretary of Education the exclusive authority to monitor and enforce the provisions of the HEA.[9] In addition, Congress specifically considered the possibility that lenders may not comply with provisions of the HEA, and established enforcement mechanisms whereby the Secretary of Education can monitor and sanction non-compliance. *See, e.g.,* 20 U.S.C. §§ 1082(g), 1082(h); 34 C.F.R. §§ 668.81–.97, § 682.413(c). For instance, Congress authorized the Secretary of Education to impose civil penalties, and to limit, suspend, or terminate a lender's participation in the federal student loan program. 20 U.S.C. § 1082(g)(1), § 1082(h). Congress also authorized the Secretary of Education to take action to stop the issuance of guaranty commitments and the payments of interest benefits to the lender. *See* 20 U.S.C. § 1082(j).

Plaintiffs argue that this Court should create a private remedy because the HEA's enforcement scheme is inadequate.[10] However, it is not up to this Court to create a statutory remedy based on the notion that Congress could have done a better job of legislating the statutory scheme. As the Supreme Court has made clear, "[t]he federal judiciary will not engraft a remedy on a statute, no matter

how salutary, that Congress did not intend to provide." *California v. Sierra Club,* 451 U.S. 287, 297, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981).

In view of the detailed enforcement scheme contemplated by Congress, the Court finds that the statutory text and structure of the HEA does not evidence an intent to create a private right of action in favor of parents or students. *See, e.g., Labickas,* 78 F.3d at 334 (holding that Congress did not intend to create a private right of action under the HEA, after considering the broad enforcement authority granted to the Secretary of Education); *Parks,* 51 F.3d at 1485 (same).

*b. The HEA's Legislative History Does Not Indicate Congressional Intent to Create a Private Right of Action.*

Plaintiffs argue that Congress considered the issue of litigation against lenders and that Congress "intended the courts to determine the actions of the lenders and the schools with respect to student loans and their defaults." Plaintiff's Memorandum, at 9–10 (D.E.41). In support, Plaintiffs contend that a House provision to protect lenders from claims against them, which was not enacted, somehow indicates Congress' intent to create a private right of action. *See* Conf. Rep. No. 102–630, p. 508, *reprinted in* 1992 U.S.C.C.A.N. 334, 623. In that Report, Congress left to the Courts the question of whether a student borrower should "be able to raise the school's fraud or other misconduct as a defense to the student's loans." Id. This issue, however, does not indicate an intention by Congress to create a cause of action to enforce the provisions of the HEA.

---

9. See 20 U.S.C. §§ 1070(b), 1071, 1082, 1094; 34 C.F.R. §§ 668, 84–.98.

10. Plaintiffs allege that "[w]ithout a private right of action, Defendants are free to violate the law without financial liability..." Complaint, ¶ 61.

Plaintiffs next argue that this Court should follow the "doctrine" set forth in *De Jesus Chavez v. LTV Aerospace Corp.*, 412 F.Supp. 4 (N.D.Tex.1976), the only district court decision to conclude that a student had a private right of action under the HEA.

In *De Jesus Chavez*, the district court reasoned that a private right of action existed under the HEA because there was no indication that Congress intended to deny a private right of action. Specifically, the district court found that "[n]either the language of the statute nor the legislative history shows an explicit congressional purpose to *deny* the plaintiff her cause of action." *Id.* 412 F.Supp. at 7 (emphasis supplied). Thus, the district court concluded that "the second factor in a *Cort v. Ash* analysis is answered by the undisputed finding that Congress made no explicit attempt to *deny* jurisdiction." *Id.* (emphasis supplied).

The Court does not find *DeJesus Chavez* persuasive, as that decision predates the Supreme Court's ruling in *Touche Ross & Co. v. Redington*, which requires some affirmative evidence of congressional intent to create a private right of action, and not just a lack of congressional intent to deny a cause of action. *Redington*, 442 U.S. at 568, 99 S.Ct. 2479. Indeed, after *Redington*, no court has adopted the reasoning of *DeJesus Chavez*.

Thus, the Court finds that the HEA's legislative history is completely silent with respect to the issue of Congress' intent to create a right to sue for violations of the HEA. *See Parks*, 51 F.3d at 1484; *St. Mary of the Plains*, 724 F.Supp. at 807.

### 3. A Private Right of Action Would Not Be Consistent With the HEA's Legislative Purpose.

The specific purposes of the HEA are to enable the Secretary of Education to (1) encourage lenders to make student loans; (2) provide student loans to those would not otherwise have access to funds; (3) pay a portion of the interest on student loans; and (4) guarantee lenders against losses. *See* 20 U.S.C. § 1071(a)(1)(A)-(D).

Given these specific purposes, the Court is not persuaded that implying a cause of action in favor of parents or students would be consistent with the purposes of the HEA and Congress' desire to encourage lenders to make loans. See *Keams*, 807 F.Supp. 569, 579–80 (D.Ariz.1992) ("Allowing student borrowers to sue lenders and accrediting agencies likely will not further these specific purposes.").[11]

A private right of action would also not be consistent with the enforcement scheme provided by Congress, as it would run counter to Congress' express purpose of providing the Secretary of Education with exclusive enforcement authority to remedy violations of the HEA. *See L'ggrke*, 966 F.2d at 1348; *Parks*, 51 F.3d at 1485.

In conclusion, after reviewing the parties' submissions, the statutory text and purpose of the HEA, the structure of the enforcement scheme, the pertinent legislative history, and the relevant case law, the Court finds that Plaintiffs have failed to satisfy the *Cort v. Ash* test.[12] Accordingly,

---

**11.** A private right of action may very well discourage, and not encourage, lenders from making student loans, as potential civil liability for non-compliance with the HEA would increase the risks and costs associated with making student loans. *See L'ggrke*, 966 F.2d at 1348, n. 4.

**12.** In light of the Court's findings with respect to the first three *Cort* factors and the lack of congressional intent to create a private right of action, consideration of whether Plaintiffs satisfied the fourth *Cort* factor is unnecessary.

because the Court finds that the HEA does not confer a private right of action in favor of Plaintiffs, Defendants' motion to dismiss Count I must be granted.

## B. The RICO Claim.

Defendants move to dismiss Count II, which asserts a RICO claim pursuant to 18 U.S.C. § 1961, *et seq.* Plaintiffs allege that the failure to disclose the availability of Stafford Loans after parents were turned down for Plus Loans constitutes mail and wire fraud. In addition to seeking treble damages, Plaintiffs ask this Court to divest Defendants' businesses, prohibit Defendants from participating in the federal guaranteed student loan program, or place "reasonable restrictions" on Defendants' participation in the federal student loan program. Complaint, at ¶ 77.

To state a RICO claim, a plaintiff must plead (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. See 18 U.S.C. §§ 1962(a)–(c).

The RICO statute defines "racketeering activity" as the enumerated crimes listed in 18 U.S.C. ¶ 1961(1), including mail fraud and wire fraud as alleged in this case. 18 U.S.C. § 1961(1)(B); *see also* 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud).

The Eleventh Circuit has explained that "mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *Pelletier v. Zweifel,* 921 F.2d 1465, 1498 (11th Cir.1991). Under the mail and wire fraud statutes, a plaintiff must allege a scheme to defraud wherein

"some type of deceptive conduct occurred." *Id.,* 921 F.2d at 1500.

Plaintiffs have identified no affirmative misrepresentations on the part of Defendants. Rather, Plaintiffs claim that Defendants engaged in a scheme to defraud Plaintiffs by failing to disclose information about Stafford Loans.

Nondisclosure of material information can constitute a violation of the mail and wire fraud statutes where a defendant has a duty to disclose, either by statute or otherwise. *See, e.g., Ayres v. General Motors Corp.,* 234 F.3d 514, 520 (11th Cir. 2000); *United States v. Brown,* 79 F.3d 1550, 1557 (11th Cir.1996).

Plaintiffs allege that Defendants had a duty to disclose financial aid information under the HEA and common law, and that their failure to do so violated the mail and wire fraud statutes, thereby satisfying the predicate acts of racketeering activity under RICO.

Given these allegations, Plaintiffs' RICO claim is only viable if (1) Defendants have a duty under the HEA or common law to provide alternative financial aid information to parents turned down for Plus Loans, and (2) a breach of that duty constitutes mail or wire fraud. *See Ayres,* 234 F.3d at 521.

1. *The Failure to Disclose Stafford Loan Information Does Not Constitute Mail or Wire Fraud Because the HEA Does Not Impose Such a Duty to Disclose on Defendants.*

 Plaintiffs argue that the HEA imposes numerous disclosure requirements on lenders, and that "the loan making duties include expressly explaining to the students [their] rights and responsibilities under the loan programs." Plaintiff's Memorandum, D.E. 41, at 15 (citing 34 C.F.R. § 682.206(a)). While Plaintiffs cor-

rectly note that HEA regulations impose specific and detailed requirements on lenders, Defendants note that none of these to parents turned down for Plus loans. Rather, the HEA's implementing regulations place the duty to provide financial aid information on educational institutions, not lenders. *See* 34 C.F.R. §§ 682.201, 668.41(d), 668.42.

Second, that the Court finds that lenders and marketers have no duty under the common law to provide alternative financial aid information after turning down applicants for Plus Loans. It appears from the plain language of 20 U.S.C. § 1099 that Congress specifically intended for the HEA to preempt any State disclosure requirements relating to loans under the federal guaranteed student loan program. That statute provides:

> Loans made, insured, or guaranteed pursuant to a program authorized by Title IV of the Higher Education Act of 1965 (20 U.S.C. § 1070 *et seq.*) shall not be subject to any disclosure requirements of any State law.

20 U.S.C. § 1099.

Under 20 U.S.C. § 1099, federal Plus Loans or Stafford Loans are not "subject to any disclosure requirements of any State law." *Id.* Thus, Plaintiffs cannot state a RICO claim based on a breach of a common law duty to disclose Stafford Loan information to Plaintiffs.[13]

Accordingly, because the HEA does not impose on Defendants any duty to disclose Stafford Loan information to parents turned down for Plus Loans, the failure to disclose such information cannot constitute mail or wire fraud, and Plaintiffs' RICO claim fails as a matter of law.

2. *Even Assuming Defendants Had a Duty to Disclose Stafford Loan Information to Plaintiffs, the Breach of that Duty is Not Actionable Under the HEA and Thus Cannot Constitute Mail or Wire Fraud.*

 Moreover, even assuming Defendants were required to disclose Stafford Loan information to Plaintiffs, Defendants' breach of that duty would not constitute mail or wire fraud. As noted above, the HEA does not confer a private right of action in favor of Plaintiffs. Instead, the HEA provides administrative remedies, whereby the Secretary of Education can monitor and sanction Defendants' noncompliance with the statute. *See, e.g.,* 20 U.S.C. §§ 1082(g) (authority to impose civil penalties upon lenders), 1082(h) (authority to impose sanctions) 1082(j) (authority to take emergency action against lenders); *see also* 34 C.F.R. §§ 668.81.97, § 682.413(c).

In the instant case, the Court finds that Plaintiffs' mail and wire fraud claims are nothing more than purported HEA violations pled in RICO terms. Thus, since Congress did not intend for Plaintiffs to

---

**13.** Although the Court need not reach the issue in light of 20 U.S.C. § 1099, it is difficult to see how Plaintiffs could otherwise establish a duty to disclose Stafford Loan information due to the existence of a common law fiduciary relationship between Plaintiffs and Defendants. As a general matter, there is no presumed fiduciary relationship between a lender and a borrower under the common law. *See, e.g., Carpenter v. Community Bank of Homestead,* 710 So.2d 65, 66 (Fla.3d DCA), *review denied,* 722 So.2d 192 (Fla.1998) (applying Florida law); *United Jersey Bank v. Kensey,* 306 N.J.Super. 540, 704 A.2d 38, 44 (1997) (canvassing other jurisdictions). In the case at bar, it appears that Plaintiffs, whose Plus Loan applications were denied by Defendants, cannot even allege the existence of a lender-borrower relationship, much less that any commercial transaction between them created a fiduciary relationship.

have a private right of action against lenders for the failure to disclose Stafford Loan information, and instead provided administrative remedies, it follows that Congress could not have intended for that same failure to disclose to constitute a violation of the mail and wire fraud statute. *See New York Institute of Dietetics, Inc.,* [No. 94–CIV–4858, 1995 WL 562189, at *4 (S.D.N.Y. Sept.21, 1995) ] (dismissing RICO claim based on alleged HEA violations after concluding that plaintiffs cannot circumvent the HEA's administrative remedies by "packaging" their HEA claim as a RICO claim).

In *Ayres v. General Motors Corp.,* 234 F.3d 514 (11th Cir.2000), the Eleventh Circuit reached the same conclusion in the context of a mail and wire fraud claim predicated on the failure to report a component defect in certain vehicles, allegedly in violation of the National Traffic and Motor Vehicle Safety Act ("Safety Act"). *Id.,* 234 F.3d at 520–522. The Court held that in light of the administrative remedies provided by the Safety Act, and the fact that the Safety Act did not confer a private right of action, the failure to inform plaintiffs of potential problems with a component part, even if required by the Safety Act, did not amount to mail or wire fraud. *Id.,* 234 F.3d at 522 (administrative remedies and lack of private right of action made clear "that Congress did not intend to equate a violation of the Safety Act's notification requirements in and of itself with the felony of mail or wire fraud").

Likewise, other courts have held that non-compliance with a regulatory statute affording administrative remedies cannot form the basis for a civil RICO claim. *See,*

*e.g., Danielsen v. Burnside–Ott Aviation Training Center, Inc.,* 941 F.2d 1220, 1229 (D.C.Cir.1991) (affirming dismissal of RICO claim where alleged mail and wire fraud consisted of violations of the Service Contract Act, which had an exclusive administrative remedy); *Norman v. Niagara Mohawk Power Group,* 873 F.2d 634, 637–38 (2d Cir.1989) (rejecting plaintiffs' attempt to circumvent administrative remedies in Energy Reorganization Act by pleading their claim in RICO terms).

Accordingly, in light of the HEA's enforcement scheme, granting the Secretary of Education exclusive authority to remedy violations of the HEA, and the fact that the HEA does not confer a private right of action, the Court finds that the failure to disclose Stafford Loan information, even if in violation of the HEA, cannot form the basis for a civil RICO claim seeking treble damages and injunctive relief.[14] For these reasons, Defendants' motion to dismiss Count II must be granted.

## C. *The State–Law Claims.*

The Court may decline to exercise jurisdiction over state-law claims, where the Court has dismissed all the federal claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Having dismissed Plaintiffs' federal claims, the Court declines in its discretion to exercise supplemental jurisdiction over the state-law claims. Accordingly, Counts III, IV and V are dismissed without prejudice.

## IV. CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that Defendants' Motions to Dismiss (D.E.23) and

---

**14.** The Court's conclusion is especially appropriate here, where Plaintiffs have requested that this Court apply the RICO statute to prohibit or place restrictions on Defendants' participation in the federal student loan program. This is precisely the type of enforcement action Congress expressly left to the Secretary of Education, and not the federal courts. *See* 20 U.S.C. § 1082.

(D.E.29) are GRANTED. Counts I and II are dismissed with prejudice. Counts III, IV and V are dismissed without prejudice. It is further....